Filed 7/11/25  P. v. La Reyes CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. PASTOR OQUELI LA REYES, Defendant and Appellant. | B341972 (Los Angeles County Super. Ct. No. GA114692) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Rosa M. Fregoso, Judge.  Affirmed.

Law Offices of Matthew Cargal and Matthew Cargal for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Stephanie C. Brenan and Stefanie Yee, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

Defendant Pastor Oqueli La Reyes appeals from the judgment after his conviction under Vehicle Code[1] section 23153, subdivision (a) for driving under the influence of an alcoholic beverage "concurrently" with committing any act forbidden by law, which proximately caused injury, and the accompanying true finding on the great bodily injury enhancement. Defendant's sole argument on appeal is that the evidence was insufficient to prove he committed an illegal act—not yielding to a pedestrian in a crosswalk. We conclude substantial evidence supports the conviction and affirm.

## FACTUAL BACKGROUND

Defendant was accused of striking pedestrian Leslie Stevenson with his truck while intoxicated. The following evidence was presented at trial.

On June 11, 2023, at approximately 9:45 p.m., Genaro Serrano Hernandez was stopped at a red light at Fair Oaks Avenue and Tremont Street in Pasadena. The weather was drizzling. Asked if he had any visibility issues, Serrano Hernandez testified, "Not much."

Serrano Hernandez saw a red truck on Tremont Street starting to turn left onto Fair Oaks Avenue. He also saw two people crossing the avenue, one of whom was in a wheelchair. The people were in the path of the turning truck, and Serrano Hernandez realized the truck was not stopping. Serrano Hernandez estimated the truck was driving between three and five miles per hour.

---

[1] Unspecified statutory citations are to the Vehicle Code.

Serrano Hernandez honked his horn to alert the truck, and the truck "stopped a little, and [the truck driver] turned but he hit the person" in the wheelchair. The person in the wheelchair fell and her face hit the ground. Serrano Hernandez saw blood on the ground. The truck driver then stopped and rolled down his window. He said to Serrano Hernandez that he had the green light. Serrano Hernandez agreed but told the driver there were people crossing the street.

Karina T., Serrano Hernandez's 16-year-old daughter, was in the car with him. She saw a woman in a wheelchair crossing the street, with another woman pushing the wheelchair. She saw a truck hit the woman in the wheelchair with enough force to "tilt the lady over." The woman was bleeding from the side of her head.

Karina T. said the truck had a green light but the sign indicating pedestrians could cross the street also was illuminated. She said it was "really hard to see that day since it was dark and it was also sprinkling." Before the accident, the truck was "going at a normal rate," but when Serrano Hernandez honked, Karina T. saw the truck "slow[ ] down a little bit."

Leslie Stevenson, the victim, was in a wheelchair at the time of the incident, with her roommate Zephra Shephaard pushing the wheelchair. They moved into the crosswalk when the crossing signal indicated they could proceed. Stevenson described the area as "pretty lit up" with street lamps and lights from buildings.

As they crossed the street, Stevenson saw "a light flash from the side." She turned her head and saw a truck approaching. Stevenson estimated the truck was moving at 25 to

30 miles per hour, although the driver slammed on the brakes before hitting her.

The next thing she remembered "was waking up down the lane." She was face down in a pool of blood. Her left side felt like "fire" and she realized she had broken her hip. She was in "excruciating pain." Her nose also was fractured. Her broken hip required surgery and multiple days in the hospital and rehabilitation center. Since the accident she also suffered headaches, blurred vision, and light sensitivity.

Charles Tucker, an officer with the Pasadena Police Department, arrived at the scene of the incident and saw Stevenson being placed into an ambulance. He saw blood on the ground. At trial, he identified in photographs the crosswalk where the incident took place. Tucker said the weather was drizzly and the lighting at the intersection was functioning.

Tucker noted that at the intersection where the incident took place, pedestrians crossing at the crosswalk would have the right of way over vehicles turning left. He further noted the crosswalk was a marked crosswalk, meaning there were painted lines delineating where pedestrians should cross.

One of the people at the scene identified himself to Tucker as the driver of the red Ford F-150 truck that struck Stevenson. At trial, Tucker identified defendant as the person who identified himself as the driver of the vehicle. The jury viewed body camera footage of defendant speaking with Tucker in Spanish at the scene, and Tucker at trial translated defendant's statements for the jury. According to Tucker's translation, defendant at first denied hitting Stevenson, but shortly thereafter admitted that he had hit her.

As Tucker spoke with defendant, he smelled alcohol and noticed defendant's eyes were red and watery and his speech was slurred. Tucker asked defendant if he had been drinking, and defendant said he had drunk two Bud Light beers. Tucker then drove defendant to a police department property and conducted a field sobriety test. Defendant's performance in the sobriety test was consistent with someone impaired by alcohol. Defendant's blood was drawn, and his blood alcohol level was determined to be 0.21 percent. A criminalist opined a person with that blood alcohol level "would be impaired to operate a motor vehicle safely."

Swapnil Shah, an orthopedic trauma surgeon, treated Stevenson following the incident, and testified she suffered a broken hip. The damage to the hip indicated a "high energy left hip fracture," consistent with an automobile striking Stevenson.

Kenia Urbina, a friend of defendant's, testified for the defense. Urbina was with defendant at a park for several hours before the incident and testified she did not observe him drink any alcohol. She also was two cars behind him at the time of the incident, although she did not see the incident itself. She noted defendant had a green light when he turned left.

Hector Chavez, an acquaintance of defendant's, also testified for the defense. Chavez was at the park with defendant before the incident, and like Urbina did not observe him drink any alcohol. Also like Urbina, Chavez was several cars behind defendant at the time of the incident, but did not see the incident itself. Chavez said he could not see well because it was dark and raining. Chavez saw defendant make a left turn, then stop, then pull over. Chavez went over to him and asked what had

happened. Defendant "said that someone hit him, a car. And then he said that he hit a person."

Defendant testified. Prior to the accident he was at a park, and he denied drinking alcohol at the park or before going to the park. Defendant said he was lying when he told Officer Tucker he had drunk two beers that day. He told Tucker he had been drinking "[b]ecause he was pressuring me" and defendant was "nervous."

Defendant testified that he made a left turn on a green light and suddenly saw a woman on the ground along with a wheelchair. He did not feel his vehicle impact anything and did not think he had hit the woman. He had been driving at a normal speed and had not seen anyone as he turned because it was rainy and dark. Asked at trial if he hit Stevenson, he said, "I don't know."

Defendant testified he told Tucker "that I would never do that in my life to drive drunk." At trial, he admitted he had been arrested in 2008 and 2012 for driving under the influence of alcohol.

## PROCEDURAL HISTORY

An information charged defendant with driving under the influence of an alcoholic beverage causing injury (§ 23153, subd. (a)). The information further alleged an enhancement for personal infliction of great bodily injury (Pen. Code, § 12022.7, subd. (a)).

The jury found defendant guilty and the enhancement allegations true. The trial court sentenced the defendant to the low term of 16 months with an additional three years for the bodily injury enhancement, for a total of four years four months. The court awarded credits and stayed all fines and fees.

Defendant timely appealed.

## DISCUSSION

On appeal, defendant argues the evidence was insufficient to convict him under section 23153, subdivision (a).

" 'To assess the evidence's sufficiency, we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] "Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]" [Citation.] A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict.' [Citation.]" (*People v. Penunuri* (2018) 5 Cal.5th 126, 142.)

Section 23153, subdivision (a) provides, "It is unlawful for a person, while under the influence of any alcoholic beverage, to drive a vehicle and concurrently do any act forbidden by law, or neglect any duty imposed by law in driving the vehicle, which act

7

or neglect proximately causes bodily injury to any person other than the driver."

In the instant case, the trial court instructed the jury that to establish a violation of section 23153, subdivision (a), the prosecution had to prove (1) defendant drove a vehicle, (2) while under the influence of an alcoholic beverage, and (3) while driving under the influence, he committed an illegal act, (4) causing bodily injury to another person. (See CALCRIM No. 2100.) As noted above, on appeal, defendant only challenges whether the evidence was sufficient to establish an unlawful act while driving under the influence.

The prosecution alleged defendant's "act forbidden by law" (§ 23153, subd. (a)) was failure to yield to a pedestrian under section 21950. Section 21950 provides, in relevant part, "The driver of a vehicle shall yield the right-of-way to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at an intersection, except as otherwise provided in this chapter." (§ 21950, subd. (a).) The statute further provides, "The driver of a vehicle approaching a pedestrian within any marked or unmarked crosswalk shall exercise all due care and shall reduce the speed of the vehicle or take any other action relating to the operation of the vehicle as necessary to safeguard the safety of the pedestrian." (*Id.*, subd. (c).)

The statute notes, however, "This section does not relieve a pedestrian from the duty of using due care for their safety. No pedestrian may suddenly leave a curb or other place of safety and walk or run into the path of a vehicle that is so close as to constitute an immediate hazard. No pedestrian may unnecessarily stop or delay traffic while in a marked or

8

unmarked crosswalk." (§ 21950, subd. (b).)  Nonetheless, "Subdivision (b) does not relieve a driver of a vehicle from the duty of exercising due care for the safety of any pedestrian within any marked crosswalk or within any unmarked crosswalk at an intersection." (*Id.*, subd. (d).)

Defendant argues the evidence was insufficient to establish he did not use due care when approaching the crosswalk, nor was there any evidence that Stevenson or Shephaard, the person pushing Stevenson's wheelchair, exercised due care for their own safety as specified under section 21950, subdivision (b). Defendant contends the evidence shows he had a green light and drove at an appropriate speed as he turned, and given the dark and rainy conditions it was difficult to see Stevenson.  He further argues, "[T]he testimony presented regarding the collision is vague and incomplete as to the full details," which "leaves substantial reasonable doubt as to whether [defendant] violated section 21950."

We disagree.  Karina T. and Stevenson testified Stevenson moved into the crosswalk when the pedestrian signal indicated Stevenson could do so, thus establishing Stevenson and her companion exercised due care for their safety.  Regardless, section 21950, subdivision (d) makes clear a pedestrian's carelessness "does not relieve a driver of a vehicle from the duty of exercising due care for the safety of any pedestrian."  Further, multiple witnesses saw defendant's truck strike Stevenson, and defendant himself admitted to Tucker that he had done so.  This evidence was sufficient to establish that defendant failed to yield to a pedestrian who was appropriately using a crosswalk.  We fail to see how the darkness or rain excuse defendant's conduct, but assuming arguendo those conditions, if they existed, would

9

excuse him, other witnesses testified the intersection had sufficient light and the rain did not significantly impair visibility. The jury was free to accept those witnesses' version of events over defendant's recollection. Also undercutting defendant's assertion that he exercised due care was the criminalist's testimony that defendant's blood alcohol level was high enough to impair his ability to operate a vehicle safely.

## DISPOSITION

The judgment is affirmed.
<u>NOT TO BE PUBLISHED.</u>

BENDIX, Acting P. J.

We concur:

WEINGART, J.

M. KIM, J.

10